Defendant-appellant, Monica Delk, appeals from a Butler County Court of Common Pleas, Juvenile Division, decision granting permanent custody of her minor child to Butler County Children Services Board ("BCCSB") and divesting appellant of her parental rights. We affirm.
On September 30, 1995, the Fairfield police arrived at appellant's home in response to a domestic violence call. Appellant was subsequently arrested, pled guilty, and spent six months in jail on her third domestic violence conviction. Whitney Delk ("Whitney"), appellant's eight-year-old daughter, was removed from the home and was placed in temporary custody with BCCSB.
On October 3, 1995, BCCSB filed a complaint alleging that Whitney was dependent and neglected. On November 3, 1995, the juvenile court held an adjudicatory hearing on BCCSB's complaint. Appellant and William Von Ploennies are the parents of Whitney, but neither of them appeared at the hearing. After the juvenile court determined that both parents were properly served,[1] it proceeded with the hearing. The juvenile court found Whitney to be dependent and neglected. The juvenile court proceeded to the disposition hearing and ordered BCCSB to determine whether Whitney could be permanently placed with relatives.
On May 15, 1996, appellant appeared before the juvenile court; Von Ploennies did not appear.[2] Appellant admitted that she has a long history of alcohol and drug abuse, but stated that she was seeking help to overcome her drug dependencies. BCCSB introduced evidence that appellant's polysubstance abuse and violent behavior has had a negative effect on Whitney. As a result, Whitney had developed severe behavioral problems and was being treated successfully with therapy. The juvenile court granted appellant a weekly supervised visit with Whitney and ordered a case plan to be designed for appellant.
On July 15, 1996, the juvenile court held a hearing in which it was established that appellant completed an "intensive phase" for drug dependency and a domestic violence program. However, appellant failed to attend all of the meetings. The juvenile court recognized appellant's effort to complete the case plan, but ordered appellant to enroll in additional programs, especially a parenting program. In addition, the juvenile court granted appellant weekly phone calls with Whitney. The juvenile court ordered that if appellant made regular contact with Whitney over the next thirty days, then appellant would be entitled to supervised visits twice each week.
On October 29, 1996, the juvenile court held a review hearing in which BCCSB claimed that during phone conversations with Whitney, appellant made inappropriate comments such as blaming Whitney for being in foster care. Appellant denied making such comments to Whitney. The juvenile court reviewed appellant's progress and found that appellant never successfully completed a parenting program, was experiencing consistent and repeated alcohol and drug relapses, and refused to participate in recommended treatment for her polysubstance abuse problems. In fact, on August 7, 1996, appellant admitted to using drugs and alcohol for a six week period. On September 23, 1996, appellant was arrested in the city of Middletown and pled guilty to intoxication and obstructing official business.[3] On October 6, 1996, appellant was again arrested in the city of Middletown and pled guilty to intoxication.
Based upon the foregoing, the juvenile court held that appellant did not fully comply with the case plan and discontinued all contact with Whitney. However, the juvenile court again gave appellant another chance. If appellant enrolled herself in a long term residential and a substance abuse program, then visitation with Whitney would resume.
On December 18, 1996, the juvenile court reviewed appellant's progress and found that appellant did not improve her situation. Appellant asked for more time since she just enrolled herself in a "detox" program. The juvenile court granted appellant's request and continued the no visitation order with Whitney.
On March 31, 1997, another hearing was held to review appellant's progress. Appellant informed the court that she was enrolled in long-term residential program with the Salvation Army and had completed parenting classes. However, appellant left the Salvation Army program before completion and appellant's parenting class results were poor. On April 4, 1997, BCCSB filed a motion for permanent custody.
On July 23 and July 24, 1997, the juvenile court held a permanent custody hearing. Appellant testified that for the past fifteen years, she used marijuana and abused alcohol. During that time, appellant received two DUI and three domestic violence convictions, used Valium and xanex with alcohol, used hallucinogens such as L.S.D. and mushrooms, and used cocaine and crack. Further, evidence showed that appellant had a history of violence and a pattern of starting treatment programs but never completing them.
On August 28, 1997, the juvenile court granted BCCSB's motion for permanent custody. The juvenile court took into consideration appellant's failure to successfully complete any substance or behavioral program, a psychologist's testimony that appellant is unable to parent now or within a reasonable time, and the fact that Whitney's best interest requires a stable and safe home. Therefore, the juvenile court felt that Whitney's best interest was served by terminating appellant's parental rights and by granting permanent custody to BCCSB where adoption proceedings could begin.
Appellant filed a timely appeal and as her sole assignment of error, appellant argues that the juvenile court's decision to grant custody to BCCSB is not supported by clear and convincing evidence.[4] We disagree.
A juvenile court may grant permanent custody to an agency if the court finds by clear and convincing evidence that the best interest of the child warrants a grant of permanent custody, and that the child cannot be placed with either parent within a reasonable time. In re Egbert Children (1994), 99 Ohio App.3d 492,495. Clear and convincing evidence is established when there is evidence to support a firm belief or conviction that a particular fact has been established or proved. In the Matter of Gipson (Sept. 30, 1997), Hardin App. No. 6-97-12, unreported, citing Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In determining the best interest of the child, R.C. 2151.414-(D) provides that the juvenile court must consider all relevant factors including the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child * * *
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
In the present case, the juvenile court considered Whitney's interrelationship with appellant, the foster parents, and Clara Delk, Whitney's maternal grandmother. The juvenile court found that Whitney loves her mother, but during the time Whitney was with appellant, Whitney has been exposed to appellant's violent episodes, experienced fear, and developed behavioral problems. Further, after visits with appellant, Whitney became upset, cried, and often felt guilty for being separated from her mother. The juvenile court found that Whitney's response following the contact with appellant was a result of appellant blaming Whitney for their separation.
The juvenile court considered Whitney's relationship with her foster parents and found that they provided a stable and safe home for Whitney. As a result, Whitney has been able to cope with her anger, feels safe, and her behavioral problems are declining.
Further, the juvenile court considered Clara Delk's involvement in Whitney's life. Clara Delk, who lives in Virginia, did not have any contact with Whitney until she was notified by BCCSB about these permanent custody proceedings. When Clara Delk began to contact Whitney, it was through birthday cards and letters. Clara Delk eventually did call Whitney, however, she never personally visited Whitney.
The juvenile court interviewed Whitney. Whitney expressed her love for all the parties involved. However, Whitney told the juvenile court that she did not want to move to Virginia, and wanted to remain with her foster parents while maintaining her visits with appellant.
In addition to determining Whitney's best interest, the juvenile court is required to assess whether Whitney can be placed with appellant within a reasonable time or not at all. In making its determination, the juvenile court is guided by a variety of factors. The relevant part of R.C. 2151.414(E) states:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and as anticipated, within one year after the court holds [a permanent custody hearing];
* * *
 (8) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child[.]
(Emphasis added.)
The record is clear that appellant was given every opportunity to deal with her polysubstance abuse, violent behavior, and to improve her basic living and parenting skills. However, the record indicates that appellant failed to complete any program successfully, refused treatment, was discharged from treatment for fighting, and engaged in inappropriate behavior with Whitney. This lack of effort demonstrates that she "has failed continuously and repeatedly to substantially remedy the conditions" that gave rise to the removal of Whitney from her custody.
There was considerable testimony from social workers and a psychologist indicating that appellant was unwilling or incapable of improving her situation. The psychologist stated that due to appellant's failure to establish a dependable pattern of sobriety, appellant is incapable of parenting and there was no reasonable time in which appellant would be capable of parenting Whitney. Other testimony established that Whitney's behavioral problems stem from appellant's violent outbreaks. However, foster care and therapy have enabled Whitney to make considerable improvements in dealing with her behavioral problems.
Further, appellant's chemical dependencies have led to numerous convictions and jail time. Since appellant has repeatedly failed to obtain permanent help for her chemical dependencies, it is likely her behavior will result in more convictions and jail time, leaving Whitney uncared for and alone. This lack of participation and inability to provide a healthy, safe, and nurturing home for Whitney makes it clear that Whitney's emotional health would continue to suffer severely if Whitney was returned to appellant. After considering appellant's inability to deal with her polysubstance abuse, the juvenile court held that Whitney could not be returned into appellant's custody now or within a reasonable time.
The juvenile court then considered giving custody to Clara Delk. Even though the home study on Clara Delk was positive, the juvenile court was concerned that granting custody to Clara Delk might place Whitney in the same chaotic home she was in a few years ago. Before BCCSB took temporary custody of Whitney, appellant and Whitney lived with Clara. At that time, Whitney's living conditions were the same. Appellant's abusive behavior was the same. Thus, Clara Delk has already demonstrated her inability to control appellant and to provide a safe home for Whitney.
Further, Clara Delk's testimony indicated that her purpose for seeking custody was temporary and to prevent appellant from losing permanent custody. The juvenile court considered other relevant factors such as the fact that Clara Delk never took the initiative to pursue custody, that Clara Delk lived in Virginia, would need additional financial support to raise Whitney, Whitney's desire not to live in Virginia, and Whitney's improvements while in foster care. Based on the foregoing, it is clear that no secure placement could be found other than granting permanent custody to BCCSB.
The record supports the juvenile court's holding that appellant is unable to lead a sober, drug free life and that appellant is unable to provide a safe and stable home for Whitney. Therefore, we find that the juvenile court properly determined that it was in the best interest of Whitney to grant permanent custody to BCCSB. We further conclude that the juvenile court's decision to grant permanent custody to BCCSB was supported by clear and convincing evidence. Accordingly, appellant's sole assignment of error is overruled and the judgment of the juvenile court is affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] At the time of the hearing, appellant was in jail for domestic violence but was personally served. The juvenile court noted that appellant could have requested transportation to be present at the hearing but chose not to do so. William Von Ploennies could not be located. Therefore, Von Ploennies was notified via publication.
[2] From October 3, 1995, when BCCSB filed its complaint, through August 28, 1997, when the juvenile court granted BCCSB permanent custody, Von Ploennies did not appear or participate in any proceeding concerning the custody of Whitney. On January 8, 1998, the juvenile court heard appellant's objection to the decision of the magistrate, at which time the juvenile court was informed that Von Ploennies had contacted appellant and just became aware that BCCSB had been awarded permanent custody of Whitney. The juvenile court overruled appellant's objection.
[3] Appellant was charged with violating Middletown City Ordinances Section 638.04B2 and Section 606.14, respectively. In addition, appellant was charged with a drug offense of using marijuana, but that charge was merged into the intoxication charge.
[4] Appellant has failed to follow App.R. 16 by not properly asserting an assignment of error. Despite this disregard for the appellate rules, this court will hear this appeal and will consider appellant's arguments as raising the indicated assignment of error.